## Case No. 11,677.

### In re REIN.

[8 Ben. 188.] [1]

District Court, S. D. New York. July, 1875.

TAXING MARSHAL'S FEES—POWER OF STANDING AUDITOR.

A marshal's bill of costs had been taxed by the standing auditor of the court, and the register was applied to to countersign the assignee's check for its payment, which he declined to do: *Held*, that the standing auditor had no power to tax the bill, and the taxation must go for nothing.

[In the matter of Philip Rein, a bankrupt.]

The register in this case certified to the court that he had been applied to, to countersign the assignee's check for the payment of the marshal's bill of costs, which had been taxed by the standing auditor, on April 5th, 1875, and that he had declined to countersign the check, being of the opinion that the auditor had no power to tax the bill.

[For subsequent proceedings in this litigation, see Case No. 11,678.]

## Case No. 11,678.

### In re REIN.

[8 Ben. 384; [1] 13 N. B. R. 551.]

District Court, S. D. New York. Feb., 1876.

BANKRUPTCY — MARSHAL'S COSTS — TAXATION — CONSENT OF ASSIGNEE.

The marshal filed with the clerk for taxation a statement of his fees under general order No. 30, amounting to $441.35, accompanied by an affidavit of a deputy marshal that the services charged for were performed and the expenses charged were paid and were just and warrantable. The assignee in bankruptcy had notice and consented in writing that the bill be taxed at $391.50, and the clerk taxed it at that amount. The assignee drew a cheque in favor

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

of the marshal for that amount, which the register refused to countersign, certifying, under the order of the court, as a reason therefor, that, as he would be afterwards charged with the duty, under section 4998, of auditing the assignee's accounts, he would then have the right to examine the items of the bill taxed, and that he thought some of the items, which must have been allowed, were not properly allowable: *Held*, that the consent of the assignee was a sufficient ground for the clerk's taxation, and that such taxation was conclusive as against the marshal and the assignee (there having been no exception to the taxation, and there being no suspicion as to the good faith of it), so far as to entitle the marshal to have the cheque countersigned.

2 [The marshal presented to the clerk the following bill for taxation, to wit:

[Amended Bill of Fees of Oliver Fiske, U. S. Marshal.

| 1874. | | | |
|---|---|---|---|
| Nov. 6. | Serving provisional warrant, and mileage | $ | 2 20 |
| " 14. | Serving warrant of seizure, and mileage | | 2 20 |
| | Serving 50 notices of one meeting, at 10c | | 5 00 |
| | Copies of notices to newspapers | | 1 00 |
| | Affidavit | | 25 |
| | Paid for publishing notice of first meeting | | 9 75 |
| | Paid George Turney, for services as keeper 20 days, at $2.50 | | 50 00 |
| | Paid George Turney, labor in packing and removing goods, 26 hours, at 40c | | 10 40 |
| | Paid Lawrence O'Brien, for labor, etc., 26 hours, at 40c | | 10 40 |
| | Paid Wm. Thomson, for paper and twine | | 3 70 |
| | Paid Robert Johnson, for packing-cases | | 4 50 |
| | Paid Frank Manchester, for labor 24 hours, at 40 cents | | 9 60 |
| | Paid Frank Manchester, services as porter 3 weeks, at $7.00 | | 21 00 |
| | Paid E. McEntee, for storage | | 12 00 |
| | Paid E. C. Murphy, cartman | | 7 00 |
| | " D. M. Poinier | | 7 00 |
| | " The Safe Deposit Co., of New York | | 10 00 |
| | Paid George H. Holmes, for labor and services | | 12 50 |
| | Paid Lawrence O'Brien, keeper, 5 days, at $2.50 | | 12 50 |
| | Paid James Turney, for services | | 100 00 |
| | Paid James Turney, for expenses | | 2 00 |
| | Commissions on value of property, $500, at 1 per cent. | | 5 00 |
| | Commissions on value of property, $9,500, at ½ per cent. | | 47 50 |
| | Commissions on disbursements, $282.35 | | 5 65 |
| | Allowance for taking inventory, 51 hours, at $1.00 | | 51 00 |
| | Allowance for 114 folios of inventory, at 20c | | 22 80 |
| | Allowance for copy of inventory, at 10c | | 11 40 |
| | Clerks, for taxation, filing orders, etc | | 5 00 |
| | | | $441 35 |

2 [From 13 N. B. R. 551.]

[Appended to the bill was the following consent, to wit:

["I consent that the above bill be taxed at $391 50/100, November 19, 1875.

["Matthew V. Cable,

["Assignee of Philip Rein."

[At the foot of this consent is the clerk's taxation, in the words and figures following:

["Bill of costs taxed at $391 50/100, November 19, 1875.    Geo. F. Betts, Clerk."

[The marshal then requested the register to countersign a check for the amount so allowed, but this request was refused. The question was then certified to court. In the certificate the register uses the following language, to wit:

[By I. T. WILLIAMS, Register:

[The statute remains. It still imperatively requires the register to audit the accounts of the assignee. The fact that the clerk has fixed the amount of this item (marshal's fees) of the assignee's final account, by taxation, at three hundred and ninety-one dollars and fifty cents, under general order 30, cannot have the effect to repeal that provision of the act, but must be construed in subjection to that provision. Undoubtedly, in most cases of this kind, the provision of the act and general order may stand together and be construed in harmony the one with the other; but in this case the order itself expressly prohibits the clerk from taxing most of the items of this bill. Is it possible to say that a register, acting under the provisions of the act above referred to, upon the final audit of the assignee's account, can overrule an objection taken by a creditor to the effect that most of the items of this bill are expressly forbidden to be allowed by the clerk, in this same 30th general order? If the precedent sought to be established by the judgment of the court in this case shall succeed, what legal obstacle can prevent any assignee from bestowing by stipulation, like that above referred to, upon the marshal, the last shilling of the largest estate. The creditors are not entitled to notice of taxation before the clerk, and can have no knowledge of the assignee's disbursement of the fund till the meeting before the register, for final audit of his accounts—generally a period of a year, and sometimes, in cases of severe litigation, of several years, after the taxation and payment of the marshal's fees. It would then, generally, be too late for a creditor to review such taxation. Beside, what a farce would be the statutory provision for auditing the assignee's accounts in the presence of the creditors, if the marshal's fees—which frequently embrace the greater part of the entire expenses of administering the bankrupt's estate—were excluded from that audit. Here were fifteen items, amounting to three hundred and thirty-nine dollars and eight cents, which, if taxable at all, are allowable only as "actual disbursements," which, in any view, are not subject to the provisions of general order 30, which is in these words:

"No other allowance to be made for custody of property, except for actual disbursements, which shall, in all cases, be passed upon by the court." Although the word "court" often includes the register, it nowhere includes the clerk—in this general order it is used in contradistinction to the clerk.

[It is, perhaps, proper to suggest that the words, "reserving to any party interested exceptions to the bill as taxed, which shall be decided by the court," in general order 30, may be construed as reserving to creditors from the operation of the previous words ("which taxation shall be conclusive") the right to object, at a final meeting, "to the bill as taxed." And this suggestion derives force from the fact that that is the time fixed for them to be heard, and the only time they have an opportunity of being heard. This case shows that the assignee alone is entitled to be heard, for it was alone upon his stipulation that the amount was taxed. An objection of that character ought certainly to be cognizable by the register, under the provision of the act requiring him to audit the last accounts of the assignee. But, whatever be the language of the general order, the well-established rules of statutory construction forbid it to be construed so as to virtually abrogate the provisions of the statute. No power to do that has been conferred upon the justices.

[I again certify and submit to the court that I am entitled to be allowed for services herein, ten dollars for this certificate, in addition to the sum of thirty dollars, claimed in my certificate herein, bearing date December 18, 1875, and to have the same or such other sum as I may be by law entitled to declared a lien upon, and first payable out of any sum that may be payable from this estate to the marshal.] [2]

BLATCHFORD, District Judge. In this case, the marshal, under an order of the court made to that end, presented to and filed with the clerk for taxation, a statement of his fees, under general order No. 30, containing 28 items, amounting in the aggregate to $441.35. It was accompanied by an affidavit of a deputy marshal as to certain particular items, and to the effect that all the services charged for in the bill were actually performed, as therein stated, and that all the expenses charged in it were actually and necessarily incurred and paid by the marshal, and are just and reasonable. The assignee in bankruptcy had notice, and thereupon consented in writing that the bill be taxed at $391.50, and the clerk taxed it at that amount. The assignee drew a cheque for the amount to the order of the marshal, which cheque the register in charge declined to countersign. The register, in compliance with an order of the court, has certified his reasons for so declining and his reasons why

the judge should not countersign the cheque.

General order No. 30 provides that the "clerk shall tax each fee-bill, allowing none but such as are provided for by these rules, which taxation shall be conclusive, reserving to any party interested exceptions to the bills as taxed, which shall be decided by the court."

The register certifies as a reason for his not countersigning the cheque, that as he will hereafter be charged with the duty, under section 4998, of auditing the accounts of the assignee, when presented at a meeting of creditors held under section 5092 or section 5093, he will then have the right to examine the items of the bill taxed by the clerk, and determine whether they are properly allowable against the estate, so far as the $391.50 taxed embraces them; that he is of opinion that some of the items in the bill, which must have been allowed as part of the $391.50, are items not provided for by statute or rule, within the provisions of general order No. 30, and, therefore, items which the clerk had no power to allow, on taxation; that it cannot be told, from the taxed bill, what items the clerk allowed, as he merely taxed the bill at the gross sum named by the assignee in his written consent; that neither the register nor the judge ought, by countersigning the cheque now, to do an act which may deprive the register of the right to hereafter audit the bill and its items, as part of the accounts of the assignee, and thus put the estate, if the bill should be audited at a less amount than that at which it has been taxed by the clerk, to the expense of recovering back from the marshal the amount overpaid; and that the provision of general order No. 30, that the taxation by the clerk shall be conclusive, cannot deprive the register of the power of auditing the accounts of the assignee, given by the statute.

As respects the marshal and his bill, the assignee represents the bankrupt and his estate and the creditors interested in it. When the marshal has concluded the rendering of his services and desires to have his bill taxed, so that it may be paid, it is proper that it should be taxed, if there be an assignee, without awaiting the presentation of the assignee's final account, which may be long delayed. In such case, notice of taxation is properly given to the assignee, and it is not necessary to give such notice to creditors. It is the duty of the assignee to examine the bill, and if, on such examination, he is satisfied that the bill is lawfully taxable at a certain amount, he has the right to consent to its being taxed at that amount. Such consent is a sufficient warrant for the taxing of the bill by the clerk at that amount. The provision in general order No. 30, that the clerk shall, in taxing any bill thereunder, allow no items or fees but such as are provided for by the general orders, imposes upon the clerk no other or greater duty than if such provision were not in the general or-

der. Every taxing officer is, by virtue of his general duty, required not to allow, as taxable, any items but such as the law prescribes and allows. But it is the universal practice that a party to a proceeding in a court of justice may bind himself and those he represents by a consent, which the judge or officer may properly adopt as a basis of action, as against the party so consenting and in favor of the other party, where the consent goes merely to the course of proceeding and not to jurisdiction. The question as to what items should be allowed is not a question of jurisdiction. When the taxation is made, it is conclusive as respects the marshal and the assignee, for the present, at least, and as respects such present taxation, unless either of them excepts to the taxation. The marshal is not bound to do anything more, or to await the auditing of the accounts of the assignee, before becoming entitled to receive the amount of his bill as taxed, unless it be shown to the court that there is some fraud or bad faith on the part of the marshal or of the assignee. The bill is taxed at $49.85 less than the sum at which it is made out. I must conclude that, on an examination of it, the assignee came to the conclusion that the taxable items in it amounted to as much as the sum to which he consented. I cannot see on the face of the bill any evidence of any fraud or bad faith on the part of any person. Of the $441.35 charged in the bill, $153.75 is for various items of services by the marshal in serving warrants and notices and in taking an inventory and for commissions, and $272.60 is for disbursements in and about the custody of the property, and $15.00 is for other disbursements. The affidavit covers the performing of the services and the making of the disbursements. By general order No. 30, and the statutes in force, it is provided that there shall be certain fees for the services of the marshal in the custody of property, which fees may extend, in certain cases, to an allowance by the hour for the taking of an inventory, and to allowances by the folio for the inventory and for a copy of it, and to commissions on the value of property and on disbursements; and that, besides this, actual disbursements in the custody of property may be allowed, "which shall in all cases be passed upon by the court." Where the disbursements are set out in the bill of fees, and are verified by affidavit, as in this case, presented to the taxing officer, and are assented to by the assignee, they are passed upon by the court, for the purposes of the taxation, if the taxing officer taxes them. The disbursement of $100 charged as paid to James Turney, the deputy marshal, for services, seems in effect to have been reduced to $50, which would be for 20 days at $2.50 a day. A disbursement of $50 is charged in respect of George Turney, as keeper, for 20 days at $2.50 per day. The affidavit of James Turney sets forth that he took possession of the property November 6th, and besides placing George Turney in charge of it as a keeper, remained in charge of it until November 25th. The other disbursements in respect of custody of property are for labor, paper, twine, packing cases, services of porter, storage, cartman, use of safe, another keeper for 5 days, and some small expenses. I see nothing in all this to raise any suspicion of the good faith of the taxation.

How far this taxation may be conclusive hereafter, on the auditing of the assignee's accounts, it is not necessary now to decide. It is conclusive for the present to entitle the marshal to have the cheque countersigned. If the cheque shall not be countersigned by the register within five days after the presentation to the register of a copy of an order to be entered hereon, the judge will countersign it, on proof of such presentation and that the cheque has not been countersigned.

I do not see that the register has any lien on the moneys in the hands of the assignee, and which may be paid out to the marshal on the cheque in question, for the services of the register in making the certificates which he has made in this case.

[For prior proceedings in this litigation, see Case No. 11,677.]